ALONZO LILLY
vs.                    } SEPTEMBER TERM, 1851.
JOSIAH KROESEN.

[PARTNERSHIP.—CONSTRUCTION OF CONTRACT OF DISSOLUTION.]

WHERE a partner seeks to discharge and falsify a settlement of the partnership affairs, upon the ground of error or mistake, the *onus probandi* is on him to show the errors, otherwise the Court will take it as a stated account, and establish it.

Each partner has the right of full and free access at all times to the books of the partnership.

Where two partners adjusted their partnership accounts, upon full, complete, and truthful *data*, ascertained the proportion of the surplus to which each was entitled, and, by their written contract, deliberately prepared and signed, stipulated how, and from what source each should receive the sum due him, such a settlement cannot be discharged or falsified on the ground of error or mistake.

Where a contract of dissolution provided that the liquidating partner "should, from time to time, as assets may be received," pay to the other a certain sum, "to place him upon equal footing with" the former, and then divide the surplus in the proportion of one-third to the former and two-thirds to the latter, and the assets proved insufficient to make up this equality, it was HELD—

That the latter was entitled to recover from the former one-third of such deficiency, the former having received from the partnership before dissolution a certain sum, in regard to which the equality was to be made by payment to the latter of the sum stipulated in the contract of dissolution.

The contract also stipulated "that no interest is to be allowed or paid by or to either party from the date" of the contract. HELD—that this refers to all sums that may be paid to either party from the date of the contract, including that required to make up the *equality* above referred to.

[The facts of this case are fully stated in the opinion of the Chancellor.]

THE CHANCELLOR:

It appears by the proceedings in this case, that on the 1st of February, 1836, articles of copartnership were signed by certain parties trading under the name and style of Alonzo Lilly & Company, and the defendant, Josiah Kroesen, the new partnership thus formed to be called Josiah Kroesen &

Company. The partnership was to continue for five years, unless dissolved at an earlier period, as specified in the articles; and of the capital of $20,000, Alonzo Lilly & Company were to put in $15,000 and the defendant $5,000, in the sums and at the periods in that respect provided for. The firm commenced the transaction of business accordingly, and the interest of John C. Baldwin, one of the persons composing the firm of Alonzo Lilly & Company, having been purchased by said Lilly, and the said Lilly and Kroesen having purchased the interest of Royal T. Church, another of said parties, the entire interest in the firm of Josiah Kroesen and Company, became vested in the said Kroesen and Lilly.

The partnership of Kroesen & Company, which, when formed, consisted of four parties, was thus reduced to two, and on the 1st of January, 1839, was dissolved by written agreement, dated on that day: the agreement of dissolution, of which the following is a copy, being written on the same paper upon which the articles themselves were written.

"BALTIMORE, 1st of January, 1839.

"Alonzo Lilly having purchased of John C. Baldwin his entire interest in the firm of Josiah Kroesen & Co., and Alonzo Lilly and Josiah Kroesen having purchased of Royal T. Church, for the sum of $2,080, payable 1st and 4th of September next, his entire interest in said firm, two-thirds of which, say $1,386 67, is charged to A. Lilly, and one-third, or $693 33, to J. Kroesen, and J. Kroesen having taken the stock of goods now on hand, which cost, as per inventory No. 6, $21,880, at the even sum of $20,000, fifteen thousand dollars of which is debited to Alonzo Lilly, and five thousand dollars to Josiah Kroesen on the books of the concern, which amounts are to settle the amounts originally put in by Alonzo Lilly & Company (whose account is now closed by A. Lilly and J. Kroesen), as the capital of the concern: It is hereby agreed, that the firm be this day dissolved, and that Josiah Kroesen shall go on to wind up the business thereof, in the order following: to wit, the amount now standing to the debit ($943 03) and

credit ($16,402 27) of A. Lilly & Co., on leger A, folio 38, are to be transferred to the debit ($943 03) and credit ($16,402 27) of Alonzo Lilly, in folio 19 of leger A, and then, after paying the debts of the concern, shall pay over from time to time, as assets may come in, say $1,402 27 to Alonzo Lilly, and $867 32 to J. Kroesen, (to each in proportion to their respective amounts,) being for the interest on the capital at first put in. This done, he shall from time to time, as assets may be received, pay to A. Lilly $7,705 70, or thereabouts, exclusive of $2,394 31 now at his debit, to place him on an equal footing with Josiah Kroesen, as regards his account of $5050, (leger A, folio 6,) for expenses, &c., and the residue (if any) to be divided from time to time, say two-thirds to Alonzo Lilly, and one-third to Josiah Kroesen, so that in the end Alonzo Lilly shall have received two-thirds and J. Kroesen one-third of the net profits of the business of Josiah Kroesen & Co., from the 1st day of February, 1836, to the 1st day of January, 1839. All sums paid to either party shall, at the time of payment, be charged to their respective accounts, and no interest to be allowed or paid by or to either party from this date."

The plaintiff's bill impeaches this contract and settlement of the partnership of Kroesen & Company in several particulars, and by an amendment made by agreement, and filed on the 24th of this month, it prays for liberty to surcharge and falsify the several accounts referred to and specified in said agreement, in the several particulars in the bill mentioned. And one of the questions, and the most important one in the controversy, is, whether a case has been made out entitling the plaintiff thus to surcharge and falsify?

The right is not placed upon the ground of fraud, which would entitle the party to open and unravel the whole account, and indeed there is no evidence in the cause upon which the least suspicion of fraud can be raised. If the right exists at all, it must be because of error or mistake, which, leaving the settlement to stand, permits the party to surcharge and falsify; the *onus probandi* being on him to whom the liberty is given;

for the Court otherwise takes it as a stated account, and establishes it.   But if the party can show an omission for which there ought to be credit, it will be added, (which is a surcharge,) or if a wrong charge is inserted, it will be deducted (which is a falsification.)   This, however, must be done by proof on his side.   2 *Daniel's Ch. Pr.*, 764, 765.

The proof in the cause is almost entirely documentary, and I can see nothing in it which leads to the conclusion, either that there was error or mistake, either in the accounts referred to in the agreement of dissolution of 1st of January, 1839, or in that agreement itself.   The agreement refers to the leger, and the folio in the leger, in which the accounts of the parties were kept, and there is nothing to show, or from which it can be inferred that the plaintiff, Mr. Lilly, had not full and free access to the books at all times, a right which belongs to him as partner equally with the defendant.   *Collyer on Partnership,* sec. 220.   Nay, the agreement of dissolution itself shows the amounts which stood to the debit and credit of the respective parties, and the books which have been produced prove the averments so stated to be correct.   There is, therefore, manifestly no error or mistake in this respect, and with regard to the sums which were to be paid for interest on the capital put in by the parties, the amount of these sums is also distinctly stated upon the face of the contract of dissolution, and if, therefore, this was a disadvantageous arrangement for the complainant, he cannot ask to be released from it upon the ground of error or mistake.

Neither is there error shown, either in the actual surplus appearing by the inventory, No. 6, which was $20,676 56, nor in the estimated surplus, which the parties assumed would be about $20,000.   The first is shown to be correct by the inventory itself, and the estimate appears to have been made by the parties upon the *data* before them.   Every facility seems to have been afforded to ascertain the true condition of the concern.   An inventory of the merchandise on hand, with the actual cost thereof,—a list of the debts due the partnership, with the names and the amounts due from the several debtors,

—a statement of the amount of the liabilities of the firm, and the condition of the accounts of the partners, were all fairly and openly exhibited before them; and there is no pretence that there was the slightest error or inaccuracy in those elements for forming a correct judgment of the condition of the partnership.

Upon *data* thus full, complete, and truthful, two intelligent merchants meet and adjust their partnership accounts, and ascertain the proportion of the surplus to which each is entitled, and by their written contract, deliberately prepared and signed, they stipulate how and from what source each shall receive the sum ascertained to be due him. It is true that subsequent events may have shown that the estimate of the parties, with reference to the value of a portion of the assets, was too sanguine, but that does not establish error or mistake in the accounts upon which the settlement was based, though it may demonstrate the plaintiff's title to receive something from the defendant for the purpose of producing that equality which the contract of settlement contemplated.

This does not appear to me to be at all like the case of *Williams* vs. *The Savage Manufacturing Company*, decided by this Court upon a former occasion, and affirmed upon appeal to the Court of Appeals. In that case the plaintiff was shown by the proof to have been of very weak mind at the period of settlement, which though based upon accounts, the accounts themselves were neither examined by the plaintiff (who, indeed, was then incapable of comprehending them) nor by any person acting for him. And in addition to this strong ground of objection to the settlement, errors plain, palpable, and seriously injurious to the plaintiff were specifically pointed out, and clearly established by the evidence.

But, though I think the plaintiff has not made out a case authorizing him to surcharge and falsify the accounts upon which the settlement was made, I am of opinion he is entitled to recover from the defendant something upon the footing of the settlement itself. The defendant, as appears by the settlement and books, had received $5,050. The plaintiff had

received, as appears in the same way, $2,394 31, and in order to place him on an equality with the defendant it was necessary he should receive the further sum of $7,705 70. The settlement, after providing for the payment of the debts of the partnership, and the interest on the capital contributed by the partners, contains this language : " This done, he" (the defendant who was made the liquidating partner) " shall from time to time, as assets may be received, pay to Alonzo Lilly $7,705 70, or thereabouts, exclusive of the $2,394 31, now at his debit, to place him on an equal footing with Josiah Kroesen, as regards his account of $5,050, leger A, folio 6, for expenses, &c., and the residue of the surplus (if any) to be divided from time to time, say two-thirds to Alonzo Lilly, and one-third to Josiah Kroesen ; so that in the end, Lilly shall have received two-thirds, and Josiah Kroesen one-third of the net profits of the business of Josiah Kroesen & Co., from the 1st day of February, 1836, to the 1st day of January, 1839. All sums paid to either party shall, at the time of payment, be charged to their respective accounts, and no interest to be allowed or paid by or to either party from this date." The state of the accounts between the parties was this: each had received back his capital and the interest upon it, and the debts having been paid, it was supposed the net surplus or profits would be about $16,000, the apparent surplus being a little upwards of $20,000. There stood charged to the defendant upon the books $5,050, and to the plaintiff $2,394 31, so that in order to put the latter upon an equality with the former, relation being had to the interest of each in the concern, it was necessary that he should receive from collections, as they might be made, the further sum of $7,705 70, before the defendant received anything more, and such is the stipulation of the contract. It was manifestly the expectation of the parties that the assets would not only be adequate to accomplish this, but that there would be a still further surplus for division, for the contract further provides for the division of such further surplus.

It has turned out, however, that the collections from the as-

sets have only been sufficient to pay the plaintiff $5,813 68, which falls short of the sum to be paid him, to make the equality proposed by the contract, by $1,892 02, so that in order to place the parties upon a footing of equality, the defendant should pay the plaintiff the sum of $630 67, being one-third of the amount of this deficiency, as the loss resulting from this deficiency should be borne by them in proportion to their interest in the profits, that is, two-thirds by the complainant, and one-third by the defendant.

But it is said the complainant was only to be paid the sum of $7,705 70, in case that amount was realized from the assets, and consequently that the whole risk of their collection was upon him. I cannot think the parties so intended, or that such is the true construction of their contract. Equality, so far as the division of the profits was concerned, clearly appears to have been intended, and no reason can be assigned why the plaintiff should be willing that the defendant should retain the sum of $5,050, standing to his debit, and treated as profits, and that the sum of $7,705 70, which he (the plaintiff) was to receive to place him on a footing of equality, should depend upon the contingency of collections. My opinion, therefore, is that the defendant must bear his share of the loss resulting from the deficiency. He has no right to retain his $5,050, whilst the complainant, instead of receiving as his share of the profits $7,705 70, shall receive no more than $5,813 68. The defendant must, therefore, pay the sum of $630 67 to make that equality contemplated by the contract, and a decree will be passed accordingly.

The only remaining question relates to the claim for interest. The contract says " that no interest is to be allowed or paid by or to either party from this date." It is argued, on the part of the plaintiff, that this stipulation is to be referred exclusively to the sums which may be received and divided between the partners, in case there should be a surplus after paying the plaintiff his $7,705 70. I do not, however, concur in this view. It refers, in my opinion, to all sums which may be paid to either party from the date of the contract. The

stipulation is, that no interest shall be allowed or paid by or to either party from the date of the contract.    But the sum of $7,705 70 was to be paid to the complainant after the date of the contract.    The money had not then been collected.    It was to be paid from time to time as assets should be received, and when the parties agreed that no interest should be allowed or paid by or to either party from the date of the contract, it is very difficult to put a construction upon the terms which shall prevent their applying to such payments.    The argument that it is unreasonable and inequitable not to allow the complainant interest on the sums paid by him after the date of the contract, when the defendant was in the actual enjoyment of his proportion of the profits, would be unanswerable, but for the explicit terms in which the parties have couched their agreement.    That agreement, however, must control their rights, there being nothing indicating imposition, concealment, or any other circumstance, which can, in any sense or to any extent, impair its validity.

But, although the plaintiff is not, in my judgment, entitled to interest from the date of the contract, I think he should have interest from the period of the filing of his bill, that is, from the 8th of January, 1830, and I shall so decree; each party paying his own costs.    Costs are not given, because it appears from a letter of defendant to the plaintiff, dated 27th of July, 1848, that the former proposed to settle with the plaintiff precisely upon the terms now established, which proposal was declined.    It may also be observed that that letter shows that the defendant then thought himself liable to the plaintiff to the extent now decreed against him.

WILLIAM SCHLEY, for Complainants.
THOMAS DONALDSON, for Defendant.